# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY BREW, | 1:04-cv-05445-LJO-GSA-PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| JOHNSON and CAMPBELL, | (Doc. 55.) |
| Defendants. | OBJECTIONS, IF ANY, DUE IN 30 DAYS |

Jerry Brew ("plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983. Now pending is defendants' second motion for summary judgment filed May 27, 2008.[1] (Doc. 55.)

**A.   RELEVANT PROCEDURAL HISTORY**

This action now proceeds on plaintiff's original complaint, filed March 18, 2004, against defendants Sgt. Johnson and Sgt. Campbell ("defendants") for cruel and unusual punishment under the Eighth Amendment, for their failure to move plaintiff out of a dormitory where he was exposed to secondhand smoke.[2]  (Doc. 1.)  On March 26, 2007, plaintiff filed a motion to compel further responses to discovery requests.  (Doc. 44.)  On May 23, 2007,

---

[1] On May 27, 2008, defendants filed an amended notice and re-submitted the motion for summary judgment they previously filed on May 23, 2007.  The court considers the motion to be defendants' second motion for summary judgment and shall refer to it as such.

[2] On August 28, 2005, the court dismissed defendants Eckard and Reynold from the complaint for plaintiff's failure to state a claim against them under § 1983.  (Docs. 11, 15.)  On May 12, 2006, defendant Hindt was dismissed from the complaint on defendants' motion to dismiss, for plaintiff's failure to exhaust administrative remedies against him.  (Docs. 25, 27.)

defendants filed a motion for summary judgment.  (Doc. 46.)  On March 11, 2008, the court granted in part plaintiff's motion to compel and, in light of ongoing discovery, denied defendants' motion for summary judgment as premature.  (Doc. 54.)  On May 27, 2008, defendants filed a second motion for summary judgment.  (Doc. 55.)  On June 5, 2008, plaintiff filed an opposition to the second motion for summary judgment.[3]  (Doc. 56.)  Defendants have not replied to plaintiff's opposition.

**B.     SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

///

///

---

[3] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the court in an order filed on September 27, 2005.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).  (Doc. 17.)

1    If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the Motion for Summary Judgment, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (*citing* United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(*per curiam*). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (*citation omitted*).

**C.    UNDISPUTED FACTS[4]**

1.   At all times relevant to the complaint, Plaintiff was an inmate lawfully confined by the California Department of Corrections and Rehabilitation at Avenal State Prison (ASP).

2.   ASP followed California Code of Regulations, Title 15, Section 3188, under which no person was allowed to smoke within five feet of any entrance/exit to, nor within the interior of, any building or the security perimeter of any facility.

3.   During the relevant time period, Defendants Campbell and Johnson were Correctional Sergeants in facility six buildings, including Building 630, in charge of supervising the Housing Unit Officers there.

4.   Building 630 is comprised of 12 dormitories, which can house over 240 inmates, and there are never more than three prison staff members overseeing the inmates in Building 630.

5.   Sometimes inmates smoked inside the buildings in violation of the smoking ban, and officers forced them to extinguish the cigarette if they were caught.

6.   Each dormitory contained a ventilation system.

7.   On March 26, 2003, Plaintiff was moved into dormitory #2 in Building 630.

///

---

[4]Although plaintiff did not file his own separate statement of disputed facts, he took issue with some of the undisputed facts set forth by defendants, and those facts are not listed here. Local Rule 56-260(b). Except for those disputed facts, defendants' statement of undisputed facts is accepted unless brought into dispute by plaintiff's verified amended complaint. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) (verified complaint may be used as an opposing affidavit if it is based on pleader's personal knowledge of specific facts which are admissible in evidence). A verified opposition to a motion for summary judgment may also be considered as an opposing affidavit for purposes of the summary judgment rule if it is based on facts within the pleader's personal knowledge. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998). However, because plaintiff's opposition was not verified, it cannot be treated as an opposing affidavit. Moran v. Selig, 447 F.3d 948, 759-60 (9th Cir. 2006).

8. The other inmates' smoking bothered plaintiff, and plaintiff's persistent complaints to prison staff regarding the smoke caused tension between him and the other inmates.

9. As Correctional Sergeants, Defendants Campbell and Johnson were not in charge of initiating inmate bed transfers.

10. The bed transfer procedure at the prison required an inmate to make a request to the Housing Unit Officer for initial approval, who would forward the request to the facility Sergeant for final approval, after which the inmate could be moved.

11. Plaintiff was moved from Building 630 on May 17, 2003, by Defendant Johnson out of concern that Plaintiff may be physically harmed by other inmates.

12. Plaintiff does not suffer from asthma, emphysema, or lung cancer and has not been treated for any respiratory conditions other than allergies.

**D. DISCUSSION**

***1. Allegations in the Complaint Against Defendants Johnson and Campbell***

Plaintiff is presently incarcerated at Avenal State Prison where the events at issue allegedly occurred in 2003 during the months of March, April, and May. (Court Docket; Complaint ("Cmp"), Doc. 1.)

Plaintiff makes the following allegations in the complaint against defendants Sgt. Johnson and Sgt. Campbell. On March 26, 2003, following an argument between plaintiff and C/O Reynold, C/O Reynold moved plaintiff into a dormitory in which the occupants smoked incessantly all day and night. (Cmp at 3 ¶IV.) On or about March 28, 2003, plaintiff spoke to Sgt. Johnson about the smoking in the dormitory and told Johnson he wanted to be moved to a nonsmoking dormitory. Id. A couple of weeks later, plaintiff spoke to building staff C/O Hindt about being moved, proposing a move into dorm 19 where plaintiff had previously lived. Id. at 3-4. Hindt did not move plaintiff. Id. The third or fourth week, plaintiff spoke with Sgt. Campbell about the smoking in the dormitory and told Campbell he wanted to be moved, and Campbell made light of the situation, stating, "Stay away from Reynold. Besides, if I move you Reynold may move you back." Id. at 4:5-9. The fourth or fifth week, plaintiff spoke to the gym

officer about being moved to the gym, and plaintiff was told he needed to speak to his counselor. Id. at 4:10-14. Plaintiff asked his counselor about being moved, and the counselor had no objection. Id. at 4:14-16, 19-20. However, counselors have nothing to do with bed moves; correctional officers submit the bed move slips which need to be approved by the Housing Sergeants. Id. at 4:17-18.

In May 2003, plaintiff went to Sgt. Campbell a second time, informing him the secondhand smoke made plaintiff queasy, and Campbell said, "Go get a bed move slip." Id. at 4:26-28. Plaintiff brought Campbell a bed move slip, and Campbell told him the building officer needed to sign it. Id. at 4:28-29. The building officer refused to sign the slip, after which Campbell told plaintiff, "Give it to my clerk." Id. at 4:29-33. Plaintiff told Campbell he didn't know who his clerk was, and that plaintiff had been running around for the last two months. Id. at 4:33-34. Plaintiff asked Campbell to resolve the problem, as supervisor, but Campbell would not take the bed move slip. Id at 4:34-36.

### 2. *Cruel and Unusual Punishment Under the Eighth Amendment*
#### a. **Legal Standard**

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45. Prison officials may avoid liability by presenting evidence that they lacked

6

knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. Id. at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Id. at 835; Frost, 152 F.3d at 1128.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. at 8 (quotations and citations omitted). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted).

Exposure to levels of environmental tobacco smoke ("ETS") that pose an unreasonable risk of serious damage to a prisoner's future health may state a cause of action under the Eighth Amendment where prison officials acted with deliberate indifference. Helling v. McKinney, 509 U.S. 25, 35 (1993). The objective factor requires that the prisoner "show that he himself is being exposed to unreasonably high levels of ETS" and that the "risk of which he complains is not one that today's society chooses to tolerate." Id.at 35-6. The subjective factor requires that the prisoner demonstrate that prison officials acted with deliberate indifference in exposing him to ETS. Id.

        *b.*     *Analysis*

First, defendants argue that plaintiff was not exposed to unreasonably high levels of secondhand smoke, because the prison had adopted a policy restricting smoking. It is undisputed that at all times relevant to the complaint, plaintiff was an inmate lawfully confined by the California Department of Corrections and Rehabilitation at Avenal State Prison (ASP). (Undisputed Fact ("UF") 1.) It is also undisputed that ASP was making a transition from a

prison without smoking restrictions to a prison which banned smoking within any building, pursuant to Cal Code Regs. Tit. 15 § 3188. (UF 2.)  It is also undisputed that Building 630 is comprised of 12 dormitories, which can house over 240 inmates, and there were never more than three prison staff members overseeing the inmates in Building 630. (UF 4.) It is also undisputed that plaintiff was moved into dormitory #2 in Building 630 on March 26, 2003, and plaintiff was moved out of Building 630 on May 17, 2003. (UF 7, 11.)  It is also undisputed that sometimes inmates smoked inside the buildings in violation of the smoking ban, and officers forced them to extinguish the cigarette if they were caught.  (UF 5.)  It is also undisputed that each dormitory contained a ventilation system.  (UF 6.)  It is also undisputed that plaintiff does not suffer from asthma, emphysema, or lung cancer and has not been treated for any respiratory conditions other than allergies.  (UF 12.)

      Defendants argue that the levels of secondhand smoke were not unreasonable, because the prison had adopted and was enforcing a policy restricting smoking. (Johnson Decl at 2:8-15; Campbell Decl at 2:8-15.)  The prison was making a transition to a prison which banned smoking indoors. (UF 2.)  Defendants contend the smoking ban, which banned smoking within any building, was strictly enforced, as shown by plaintiff's admission that when an officer caught an inmate smoking, the inmate was forced to extinguish the cigarette. (Pltf's Depo. at 26:20-25.) Defendants contend that the smoking ban was enforced by prison staff to the best of their abilities, but they were unable to eliminate all infractions in Building 630 because there were only three officers supervising more than 240 inmates there.  (Johnson Decl at 1:27, 2:11-23; Campbell Decl at 1:27, 2:11-23.)  Defendants contend, however, that an advanced ventilation system constantly circulated in fresh air. (Johnson Decl at 2:24-27; Campbell Decl at 2:24-27.) Defendants contend that plaintiff does not have actual proof of harm of the likelihood of injury, as shown by the fact that plaintiff does not have any respiratory condition that made him particularly vulnerable to agitation from second-hand smoke, such as asthma, emphysema or lung cancer, and he has never been treated for any respiratory conditions other than allergies. (Pltf's Depo at 56:1-21.)  Defendants conclude that the combination of the indoor smoking ban, the enforcement of the regulation, and the ventilation system minimizing the residual smoke in the

8

building assured that plaintiff was not exposed to an unreasonable risk of serious harm to his future health during the two-month period at issue.

Second, defendants argue that they did not possess the required subjective state of mind, to "know of and disregard an excessive risk of harm to plaintiff's health or safety," as shown by the conduct and knowledge of the individual defendants. It is undisputed that defendants Campbell and Johnson were Correctional Sergeants in facility six buildings, including Building 630, in charge of supervising the Housing Unit Officers there. (UF 3.) It is undisputed that as Correctional Sergeants, neither defendant was responsible for transferring an inmate to another bed. (UF 9.) It is also undisputed that the bed transfer procedure at the prison required an inmate to make a request to the Housing Unit Officer for initial approval, who would forward the request to the facility Sergeant for final approval, after which the inmate could be moved. (UF 10.)

According to defendants, plaintiff's claim that they should have moved him to another building lacks merit, because neither defendant was responsible for transferring an inmate to another bed. (Johnson Decl. at 3:1-7.)  Defendant Johnson contends that he was not presented with a proposed transfer of plaintiff from a housing unit officer. (Johnson Decl at 3:8-9.) Defendant Campbell contends that plaintiff did not approach him about a bed move. (Campbell Decl at 2:28.) Defendants argue that under <u>Farmer</u>, the steps taken by prison staff to minimize any risk of secondhand smoke absolve defendants of liability. <u>See</u> <u>Farmer</u>, 511 U.S. at 844-45. Defendants conclude that the evidence fails to support any claim that the defendants acted with subjective recklessness or a sufficiently culpable state of mind that would entitle plaintiff to prevail in this action.

The court finds that defendants have met their initial burden of informing the court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist. <u>See</u> <u>Matsushita</u>, 475 U.S. at 586. As stated above, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

9

material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

      Turning first to whether plaintiff was exposed to levels of secondhand smoke posing an unreasonable risk of damage to his health, it is undisputed that plaintiff was exposed to secondhand smoke for at least two months in Building 630.  (UF 7, 11.)  Plaintiff contends that the occupants of dormitory #2, where he was housed, smoked incessantly all day and all night.  (Cmp at 3 ¶IV.)  Although he has not knowingly contracted a disease, plaintiff contends that he experiences shortwindedness, has spat up black soot, has experienced headaches, felt queasy, and suffers from psychological fear.  (Cmp at 4:7, 27; Pltf's Depo at 38:25, 39, 40:1-3.)  Plaintiff contends he did not complain at first to the doctor about his respiratory problems because he was afraid it would get back to the other inmates that he was complaining about them because of the smoke.  (Pltf's Depo at 39:10-25, 40, 41:1-24; Pltf's Opposition Exh B, Health Care Services Request on form CDC 7362 .)

      Accepting as true plaintiff's allegations, the constant exposure, day and night, to secondhand smoke indoors for over two months clearly posed an unreasonable risk of damage to plaintiff's health.  The facts show that each dormitory in Building 630 contained approximately twenty inmates.  Even if only half of the inmates smoked, it is intolerable in today's society for the state to force a person to endure such levels of secondhand smoke for hours on end.  The changes in policy at the prison to reduce the amount of smoke in the immediate environment demonstrates that the state recognized the dangers of secondhand smoke.  Although defendants contend that the smoking ban was strictly enforced, they also admit that infractions occurred often enough that the ventilation system was needed to disperse the smoke.  Although plaintiff may not have evidence of a respiratory disease resulting from the smoke, the fact that he spat up black soot proves that he experienced physical effects.  The court rejects defendants' argument that because plaintiff cannot prove injury, he cannot establish liability.  Defendants have set forth no authority for the proposition that plaintiff must suffer an injury of a certain magnitude in order to maintain an Eighth Amendment claim and the court is aware of none.  Defendants may be held liable for violating the Eighth Amendment if they know of and disregard an excessive *risk* to

plaintiff's health or safety. Farmer, 511 U.S. at 837-38. There is no requirement that the harm which is risked actually befall the inmate.

Turning next to whether defendants acted with deliberate indifference, plaintiff alleges that defendants failed to move him from the smoke-filled dormitory even though he complained to them about it and requested a bed move. Plaintiff was moved into dormitory #2 in Building 630 on March 26, 2003. (UF 7.) Plaintiff contends that on or about March 28, 2003, he spoke to defendant Johnson about the smoking in the dormitory and told Johnson he wanted to be moved to a nonsmoking dormitory. (Cmp at 3 ¶IV.) The third or fourth week after he was moved, plaintiff contends he spoke with defendant Campbell about the smoking in the dormitory and told Campbell he wanted to be moved, and Campbell made light of the situation. Id. at 4:5-9. When plaintiff went to Campbell a second time in May 2003, informing him the secondhand smoke made him queasy, Campbell said, "Go get a bed move slip." Id. at 4:26-28. Plaintiff brought Campbell a bed move slip, and Campbell told him the building officer needed to sign it. Id. at 4:28-29. The building officer refused to sign the slip, after which Campbell told plaintiff, "Give it to my clerk." Id. at 4:29-33. Plaintiff told Campbell he didn't know who his clerk was, and that plaintiff had been running around for the last two months. Id. at 4:33-34. Plaintiff asked Campbell to resolve the problem, as supervisor, but Campbell would not take the bed move slip. Id. at 4:34-36.

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

In order to raise a triable issue of fact on his claim against defendants, plaintiff is required to tender some evidence that defendants acted with deliberate indifference. Plaintiff has submitted no evidence that would support his claim that defendants Campbell and Johnson

violated his Eighth Amendment rights by acting with deliberate indifference to a serious threat to his health. The general contention that plaintiff expressed concern to defendants but they did not do anything is insufficient to raise a triable issue of fact with respect to whether defendants knew of and disregarded a substantial risk to plaintiff's future health. Although it appears defendants could have been more helpful to plaintiff in his attempts to request a bed move, plaintiff has not shown evidence that they deliberately acted to threaten his health or refused to move him in deliberate disregard of a known threat to his health. As such, plaintiff fails to prove an element essential to his case. Accordingly, for the foregoing reasons, the court finds that defendants are entitled to judgment as a matter of law on plaintiff's Eighth Amendment claim against them.

### 3. *Qualified Immunity*

Defendants argue they are entitled to qualified immunity. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. Id. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202.

Here, because the court finds that defendants' conduct did not violate plaintiff's constitutional rights, the issue of qualified immunity need not be considered.

### E.  CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' second motion for summary judgment, filed May 27, 2008, be GRANTED, thus concluding this action in its entirety;

1                2.        Judgment be entered in favor of defendants in this action; and

2                3.        The Clerk be directed to close this case.

3          The Court further ORDERS that these Findings and Recommendations be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within THIRTY (30) days after being served with a copy of these Findings and Recommendations, any party may file written Objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the Objections shall be served and filed within TEN (10) court days (plus three days if served by mail) after service of the Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(c).  The parties are advised that failure to file Objections within the specified time may waive the right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

    IT IS SO ORDERED.

    Dated:   **September 9, 2008**                    **/s/ Gary S. Austin**
                                                          UNITED STATES MAGISTRATE JUDGE